UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MISTY D. D., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 3:21-cv-5405-TLF <br><br> ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of their application for SSI.

The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13.

I.   ISSUES FOR REVIEW

A. Did the ALJ properly evaluate the medical opinions of Dr. Rogers, Dr. Losee, and Dr. Borton?

B. Was the ALJ's determination concerning plaintiff's testimony supported by substantial evidence with specific findings, and were the ALJ's reasons for rejecting certain portions of plaintiff's testimony clear and convincing?

C. Did the ALJ commit harmful error regarding the statements of Christina G., plaintiff's mother?

D. Was the ALJ's determination of plaintiff's residual functional capacity (RFC) erroneous, and if so, did the ALJ commit harmful error?

E. Should the case be remanded, and if so, should the remand be for an award of benefits or for additional proceedings?

F. Should the Court review plaintiff's Constitutional challenge?

## II.     DISCUSSION

Plaintiff's application (submitted August 26, 2015) for Supplemental Security Income (SSI) Social Security disability benefits has been reviewed by this Court, and was reversed and remanded in a prior appeal. AR 727-734.

In this case, the onset date is August 26, 2015, with a closing date of August 31, 2018. AR 607. The ALJ found, after a hearing on November 19, 2020, that plaintiff had the following severe impairments during this period: "fibromyalgia/chronic pain syndrome; major depressive disorder; generalized anxiety disorder; cervical degenerative disc disease; ventral hernia, status post-surgical repair; headaches." AR 583 (ALJ's Decision dated January 28, 2021). The ALJ also found that plaintiff could not perform her past work, but she would be able to perform other work that existed in significant numbers in the national economy during the relevant period, and therefore she was not disabled. AR 592.

The Court will set aside the Commissioner's decision denying Social Security Benefits after an administrative hearing only when: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v.*

*Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla," of evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court considers in its review only the reasons the ALJ identified and may not affirm for a different reason. *Id.* at 1010. Furthermore, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citations omitted).

If the ALJ's decision is based on a rational interpretation of evidence, and the evidence could be subject to more than one rational interpretation, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.,* 533 F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss *all* evidence presented". *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*

   A.  Dr. Rogers, Dr. Losee -- treating or examining physicians; Dr. Borton – non-examining physician

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 3

1194, 1198 (9th Cir. 2008)). When a treating or examining physician's opinion is contradicted, an ALJ must provide specific and legitimate reasons for rejecting it. *Id.* In either case, substantial evidence must support the ALJ's findings. *Id.* Under Ninth Circuit law, opinions from non-examining medical sources that contradict a treating physician's opinion will trigger the "specific and legitimate reasons" standard of review. *See, e.g.*, *Revels v. Berryhill*, 874 F.3d 648, 662 (9th Cir. 2017) (requiring only specific and legitimate reasons where treating doctor's opinion was "contradicted by the findings of Dr. Rowse and Dr. Blando, the non-examining doctors from the state agency, and, to some extent, the opinion of Dr. Ruggeri, the hand specialist").

"Determining whether inconsistencies are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount the opinions of [treating or examining doctors] falls within this responsibility." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999).

A non-treating, non-examining source's opinion is generally entitled to less weight than a treating or examining opinion. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996).

The United States Court of Appeals for the Ninth Circuit has held invalid the discounting of a medical source opinion on the basis of waxing and waning symptoms, because symptoms of mental health diseases commonly fluctuate in severity. *Revels v. Berryhill,* 874 F.3d 648, 663 (9th Cir. 2017); *Garrison v. Colvin*, 759 F.3d 995, 1017-18 (2014).

- Dr. Rogers

1 | Plaintiff asserts the ALJ erred by giving Dr. Rogers' opinion partial weight. Dkt.
2 | 17, Opening Brief, at 3-4.
3 | Dr. Rogers, a clinical psychologist, examined plaintiff on March 5, 2016. AR 395-
4 | 389. As plaintiff points out, the record shows that Dr. Rogers did assess some of
5 | plaintiff's functional limitations: Dr. Rogers opined that plaintiff was not capable of
6 | managing her own funds (AR 388); pain impacted both concentration and persistence
7 | (AR 388); and recent or immediate memory was negatively impacted more so than
8 | remote memory (AR 388). Therefore, the ALJ's decision discounting Dr. Rogers' opinion
9 | for this reason is not supported by substantial evidence. This was the sole reason given
10 | by the ALJ for discounting Dr. Rogers' opinion. AR 590.
11 | An error is harmless only if it is not prejudicial to the claimant or "inconsequential"
12 | to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r Soc. Sec. Admin.*,
13 | 454 F.3d 1050, 1055 (9th Cir. 2006). Here, defendant argues this is harmless error, yet
14 | with respect to psychologically-based limitations, the ALJ asked the Vocational Expert
15 | only to assume a person "would be able to perform simple, routine, and repetitive tasks,
16 | in a work environment that is free of fast paced production requirements, involving only
17 | simple work-related decisions with few, if any workplace changes." AR 649.
18 | The jobs the VE described that plaintiff would be able to handle as full-time
19 | employment were  "office helper", "courier", and "storage rental clerk". AR 649-651. The
20 | ALJ did not include in the hypothetical any questions about persistence, concentration,
21 | or impairment to short- or long-term memory – and how plaintiff's limitations may, or
22 | may not, disqualify her from performing the tasks necessary for full-time employment in

such occupations. Therefore, the ALJ's error with respect to discounting Dr. Rogers' opinion is not harmless.

- Dr. Losee

Regarding Dr. Losee, plaintiff argues the ALJ erred by failing to fully account for, in the RFC, the limitations that Dr. Losee discussed in their medical opinion. Dkt. 17, Opening Brief at 7-8.

Dr. Losee's opinion, dated June 21, 2017, was given great weight by the ALJ. AR 589. Dr. Losee stated that: "[plaintiff's] anxiety appears to be moderately severe with frequent worry, chronic anxious arousal, and panic attacks. Her depression currently appears to be of moderate severity and tied to her reported pain and fatigue. It is affecting her motivation, interest in things, socializing, and ability to complete some activities of daily living such as showering and dressing. . . ." AR 521-522. In addition, Dr. Losee opined that assessments of plaintiff's attention and concentration were not showing an overall impairment, yet "it is likely that she experiences impaired concentration during panic attacks." AR 522, 524. Dr. Losee also opined: "[plaintiff] is able to understand, remember and carry out simple and detailed instructions. She is capable of making work-related decisions. She is capable of adapting to changes in a work setting. Interpersonally, [plaintiff] is capable of interacting appropriately with supervisors, coworkers, and the public, but with social discomfort and withdrawal. She is capable of managing her finances should she receive benefits." AR 522.

Although the ALJ gave more weight to Dr. Borton's assessment (see AR 589), there is no indication that the ALJ rejected Dr. Losee's conclusions about plaintiff's panic attacks.

Impaired concentration during panic attacks could be a significant impairment if plaintiff were fully employed in one of the occupations suggested by the V.E.: "office helper", "courier", or "storage rental clerk". Panic attacks and impaired concentration were not included in the hypothetical that was propounded by the ALJ to the Vocational Expert, and impacts of this impairment were not included in the residual functional capacity. AR 585, 649-651. Therefore, this was harmful error.

- Dr. Borton, non-examining medical source

Plaintiff argues that the ALJ erred by failing to include, in the RFC, findings made by Dr. Borton about plaintiff's limitations with respect to sustaining a normal workday and week, and limitations concerning her ability to concentrate. Dkt. 17, Opening Brief at 9-10.

Dr. Borton reviewed plaintiff's records and provided an opinion on March 16, 2016. AR 85. They opined, in relevant part, that: "[plaintiff's] pain and anxiety would set some limits on her ability to sustain a normal workday and week, and to engage in activities that require extended concentration, but these would not be so severe or constant as to make her completely unemployable at any job whatsoever. . . ." AR 85. Dr. Borton assessed plaintiff's capacity for sustained concentration, pace, and persistence as being moderately limited, and that she would have sufficient concentration, pace, and persistence to work 40 hours per week. AR 88.

As noted above, the ALJ's questions to the V.E., and the ALJ's decision on plaintiff's RFC, do not include limitations relating to concentration, or on the ability to sustain the level of functioning necessary to work a normal workday or work week. Because the ALJ determined that Dr. Borton's opinion was entitled to great weight, the

1  ALJ found there was support in the record to uphold the value of this opinion from a
2  non-examining medical source. Despite finding that plaintiff was moderately limited, Dr.
3  Borton nevertheless opined that plaintiff would be able to sustain concentration, pace,
4  and persistence for a 40-hour work week. The ALJ therefore was not required, when
5  considering Dr. Borton's opinion, to incorporate such a limitation into the RFC.

6          B.  The ALJ's consideration of plaintiff's testimony

7  Plaintiff argues the ALJ committed harmful error in evaluating her statements
8  about symptoms and work-related limitations. Dkt. 17, Opening Brief at 10-15. Plaintiff
9  contends the ALJ erred by not accurately weighing the medical opinion testimony –
10 thereby tainting the consideration of plaintiff's statements. Also, plaintiff argues the ALJ
11 erroneously found that plaintiff had made inconsistent statements to medical providers.
12 Plaintiff also points out the ALJ erred by finding that her fibromyalgia symptoms wax
13 and wane, and were not supported by objective medical test findings. And, plaintiff
14 asserts the ALJ erred by discounting her statements based on activities that she can
15 accomplish in her daily life. *Id.*

16 In weighing a plaintiff's testimony, an ALJ must use a two-step process. *Trevizo*
17 *v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether
18 there is objective medical evidence of an underlying impairment that could reasonably
19 be expected to produce some degree of the alleged symptoms. *Ghanim v. Colvin,* 763
20 F.3d 1154, 1163 (9th Cir. 2014). If the first step is satisfied, and provided there is no
21 evidence of malingering, the second step allows the ALJ to reject the claimant's
22 testimony of the severity of symptoms if the ALJ can provide specific findings and clear
23 and convincing reasons for rejecting the claimant's testimony. *Id. See Verduzco v.*

24

25

*Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistent testimony about symptoms is a clear and convincing reason to discount subjective allegations).

The ALJ is required to state what testimony they determined to be not credible and point to the evidence that undermines the plaintiff's credibility. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Although the Court upholds an ALJ's findings when they are supported by inferences reasonably drawn from the record, *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004), the ALJ must actually state such inferences to give a cogent explanation. The ALJ needs to make findings sufficiently specific to allow this Court to conclude that the ALJ rejected the testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony. *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001).

Plaintiff's activities during the relevant period do not provide a clear and convincing reason to reject her testimony. The ALJ relied on plaintiff's activities to reject her claim of disability in general, but she did not identify how specific activities undermine specific testimony. Most of the activities the ALJ noted are not the type that can be readily transferred to a work setting. *See Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) ("House chores, cooking simple meals, self-grooming, paying bills, writing checks, and caring for a cat in one's own home, as well as occasional shopping outside the home, are not similar to typical work responsibilities."). The record does not demonstrate that plaintiff has engaged in these activities either at a frequency or to an extent that would indicate that she can "spend a substantial part of . . . her day performing" them. *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).

And, although caring for her autistic adult child (AR 588) could conceivably be inconsistent with parts of plaintiff's testimony, the ALJ did not make such connections, and the record does not contain evidence about how frequently plaintiff engages in these activities or what physical and mental functions they require as plaintiff performs them. *See Trevizo*, 871 F.3d at 682. Plaintiff explained that her son, her mother, and her boyfriend, handled a lot of household chores during the relevant period, because plaintiff was in extreme pain, and felt dizzy from anxiety/panic attacks, and medication side effects. AR 638-640.

Second, with respect to plaintiff's fibromyalgia, chronic pain syndrome, and psychological impairments, the ALJ found that medical evidence and other evidence in the record did not support the degree of limitation plaintiff alleged. AR 586. Inconsistency with objective evidence may satisfy the clear and convincing requirement. *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). But an ALJ may not reject a claimant's subjective symptom testimony "*solely* because the degree of pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (internal quotation marks omitted and emphasis added); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain).

The ALJ lacked support for finding that the objective evidence undermines plaintiff's testimony about her condition. While the ALJ stated that plaintiff's pain waxed and waned, it is unclear how this undermines plaintiff's claims of pain and resulting limitations, which the record suggests are due to chronic pain syndrome and fibromyalgia – these are conditions for which symptoms may wax and wane, and there

may not be a documented objective source of the pain. *Revels v. Berryhill,* 874 F.3d 648, 666 (9th Cir. 2017); *see Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (ALJ may not "cherry-pick[ ]" items from treatment record without considering them in context of "diagnoses and observations of impairment"). In addition, the waxing and waning of symptoms, as well as the side effects of medication, would undermine the ALJ's finding that plaintiff made inconsistent statements to her medical providers. If symptoms and medications are causing fluctuations in her ability to describe what is happening at any given time, then it is understandable that plaintiff might make inconsistent remarks to her medical providers.

The defendant contends the ALJ relied on a clear and convincing reason, because the ALJ stated that plaintiff's symptoms improved with treatment. Dkt. 19, Responding Brief at 17. In the ALJ's decision, she makes reference to improvement in symptoms with pain management (AR 587) and with counseling to address depression, anxiety, and panic (AR 588).

The Court agrees with plaintiff that this is a post-hoc rationale (see Dkt. 21, Reply Brief, at 6).

The ALJ did not make a specific finding of sustained improvement with treatment – and even though the record shows some periods of improved symptoms, the record also shows these were time periods where the ups and downs of the plaintiff's symptoms, limitations, and various conditions, were swinging toward some amount of improvement. E.g., AR 417 (notes from Dr. Phan, on 12/30/2016, that plaintiff "reports that Lyrica is helping but she questions if she can get a higher dose [patient] states that she takes it at 5am and that by 10am she is already in pain again. . ."; AR 418-419

(notes from Dr. Phan, on 9/29/2016, that patient has chronic muscle and joint pains and fatigue, has tried gabapentin, and the medication caused blurry vision and feeling unwell. But, it does not give enough pain relief for her to feel comfortable.); AR 437-438 (notes of Dr. Narasimhamurthy, 6/15/2016, stating that plaintiff was recovering from a hysterectomy and continued, six weeks later, to have "pain in the umbilical area for the past few weeks, experiences dull aching pain only on exertion and lifting weights and sometimes even at rest."); AR 451 (notes from Dr. Narasimhamurthy dated 8/3/2016 describing generalized pain all over plaintiff's body, and various drugs used to treat the pain, that medications caused side effects and were discontinued; also states that plaintiff chose not to use opiates); AR 483-493 (indicating on 8-1-2016 that plaintiff was requesting a renewal of 180 days of additional mental health treatment, and was suffering from panic attack symptoms of mental illness seven days a week – but intensity of panic had decreased somewhat); AR 490-493 (mental health assessment on 2-1-2016 describing depression and panic); AR 503 (Notes of Dr. Sakin, on 2/3/2017, noting that plaintiff has fibromyalgia symptoms and that Lyrica was helpful, suggesting additional medications); AR 512-518 (report of Dr. Gaffield, dated 6-7-2017, finding zero trigger points for fibromyalgia); AR 537-539 (notes of Dr. Abbott, dated 8-30-2017, describing pain in plaintiff's hands, neck, arms); AR 547-550 (notes of Dr. Zechmann, dated 7-31-2017, describing X-ray of left shoulder showing "significant irregularity of the distal clavicle", and describing plaintiff's significant pain in neck and shoulder).

C. <u>Lay Witness Evidence – Christina G.</u>

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001). Because the Court has found reversible error on other grounds, this issue will not be reviewed.

D. <u>Harmless Error</u>

An error is harmless only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). "In determining a claimant's residual functional capacity, the ALJ must consider all of a claimant's medically determinable impairments . . . ." *Ghanim v. Colvin,* 763 F.3d 1154, 1166 (9th Cir. 2014) (citing 20 C.F.R. § 404.1545(a)(2). An ALJ's step five determination will be upheld if the weight of the medical evidence supports the hypothetical posed to the vocational expert. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's functional limitations "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted).

If the ALJ gives a hypothetical to the V.E. that fails to include one or more of the claimant's medically determinable impairments, then the testimony of the V.E. lacks evidentiary value, and the RFC would not be accurate. *Ghanim,* at 1166.

E.  <u>The Constitutional Issue Need not be Decided</u>

Plaintiff, citing the United States Supreme Court's decisions in *Seila Law LLC v. CFPB,* 140 S.Ct. 2183 (2020); and *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018), contends that the Commissioner of the Social Security Administration was appointed under an unconstitutional statute, and had no authority to delegate to an ALJ during the proceedings in plaintiff's case. Dkt. 17, Opening Brief at 18-19. Defendant contends there is no nexus between the alleged constitutional infirmity in the statute, and the harm alleged by plaintiff. Dkt. 19, Responding Brief at 4-11; See *Collins v. Yellen,* 141 S.Ct. 1761, 1787-1789 (2021). Because this case can be resolved without considering this claim, the Court declines to address these issues.

F.  <u>Remand for Award of Benefits</u>

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited

evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. 80 F.3d 1041, 1045 (9th Cir. 2017).

Here, plaintiff asks that the Court remand for an award of benefits based on the ALJ's errors concerning plaintiff's statements, and errors in weighing the opinions of Dr. Rogers, and Dr. Losee. If plaintiff's testimony and the opinions of Dr. Rogers, and Dr. Losee, were credited as true, the record shows that plaintiff would necessarily be found disabled at step five, on remand.

The Court also considered the length of time plaintiff has been waiting for a final disposition. *See Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Plaintiff filed her application for SSI in in 2015 and has been waiting nearly seven years for a final decision on her claims. *See, Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (remanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand).

Accordingly, remand for an award of benefits is the appropriate remedy.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ erred in determining that plaintiff was not disabled during the relevant period Defendant's decision to deny

1  benefits therefore is REVERSED and this matter is REMANDED for an award of

2  benefits. The Court reverses the decision of the ALJ and remands to the Commissioner

3  for an award of benefits.

4      Dated this 4th day of April, 2022.

*(signature)*

Theresa L. Fricke
United States Magistrate Judge

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 16